## BEFORE THE SECOND DIVISION, JANUARY 19, 1950

**No. 53943.**—Mitteldorfer Straus, Inc. *v*. United States, petition 6760–R (New York).

FORD, Judge: This petition, praying for the remission of additional duties incurred by reason of undervaluation of imported merchandise when the entry was made, was filed under the provisions of section 489 of the Tariff Act of 1930.

The merchandise in this case was imported from France, and it appears that in entering the merchandise the broker adopted as the basis of his entry the rate of $.004671 for the French franc, which resulted in an entered value of $765, whereas it appears from the red-ink notation of the appraiser on the invoice that the merchandise was "Appraised in U. S. dollars 1. for 118.90 francs at invoice unit values, plus 1.01 %, plus cases & packing." This resulted in a total appraised value of $1,378, as against the entered value of $765. This importation was made at about the time of the devaluation of the French franc.

At the trial of this petition, the broker who made the entry herein, in explanation of his action in the matter, stated:

On the basis of the information here, I submitted it [the invoice] to the appraiser, because at that time the French franc was in a rather bad condition as far as exchange was concerned. In fact, there were no published Federal Reserve Bank rates of exchange during that period because of the devaluation, so I submitted it to the appraiser, and at that time nobody had a rate of exchange, including the Collector. For that reason, he asked withheld appraisement bonds and instructed me to enter at the unit invoice prices. I couldn't enter it for about two weeks until the Treasury Department issued an order that all entries made on merchandise shipped between January 30th of that year and February 16th, the period when no rate was published, should be taken at the rate published on February 16. The final decided Federal Reserve rate was .004671, so I converted at that rate and entered it. In fact, that is the only way you could enter in the Collector's office. You couldn't use any other rate.

The broker also testified that he submitted the invoice to the appraiser, seeking any information which the appraiser might have had regarding the proper value at which entry should have been made; that in making this entry he did not withhold any information regarding the value of the merchandise from the appraiser or any other Government officer, and that he had no intention to defraud the revenue of the United States by preparing the entry as he did. The so-called submittal sheet was admitted in evidence and marked exhibit 1. This exhibit tends to confirm the testimony of the broker to the effect that he submitted the invoice to the appraiser with a request for any value which he, the appraiser, might have had regarding the correct value at which entry should have been made.

Mr. Nathan W. Schwartz, president of the petitioner company herein, testified that the merchandise was purchased on the basis of the prices set forth on the consular invoice in French francs; that when the invoice was delivered to the broker, he had standing instructions to submit the invoice to the appraiser for whatever information he might have regarding the proper value for entry purposes, make the entry, and pay the proper duty on the merchandise; that in giving instructions to make the entry, as was done in this case, there was no intention to defraud the revenue of the United States, conceal or misrepresent any of the facts of the case, or to withhold any information pertaining to any matter relating to this importation.

Based upon the facts as above outlined, we find that in making the entry in this case at a value less than the final appraised value there was no intention on the part of the petitioner to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the true value of the merchandise. The petition is, therefore, granted. Judgment will be rendered accordingly.